SEABOARD & WESTERN AIRLINES, Inc.
v. CIVIL AERONAUTICS BOARD (PAN
AMERICAN AIRWAYS, Inc., et al., Inter-
venors).

No. 10193.

United States Court of Appeals.
District of Columbia Circuit.

Argued Nov. 1, 1949.

Decided Dec. 5, 1949.

Mr. Hardy K. Maclay, Washington, D.
C., with whom Mr. Stanley Gewirtz, Wash-
ington, D. C., was on the brief, for peti-
tioner.

Mr. Warren L. Sharfman, Washington,
D. C., with whom Mr. Herbert Bergson, As-
sistant Attorney General, Messrs. Edward
Dumbauld and William D. McFarlane,
Special Assistants to the Attorney General,
and Mr. Emory T. Nunneley, Jr., General
Counsel, Civil Aeronautics Board, Wash-
ington, D. C., were on the brief, for re-
spondent.

Mr. Howard C. Westwood, Washington,
D. C., with whom Messrs. James H. Mc-
Glothlin and Daniel M. Gribbon, Washing-
ton, D. C., were on the brief; for inter-
venors American Airlines, Inc., and Ameri-
can Overseas Airlines, Inc.

Messrs. Hugh B. Cox, Washington, D.
C., Henry J. Friendly, New York City, and
John K. Mallory, Jr., Washington, D. C.,
filed a brief on behalf of intervenor Pan
American Airways, Inc.

Before EDGERTON, PRETTYMAN,
and PROCTOR, Circuit Judges.

PRETTYMAN, Circuit Judge.

This is a petition to review an order of
the Civil Aeronautics Board, denying a
motion of Seaboard & Western Airlines,
Inc., for consolidation of its application
for a certificate to transport property be-
tween the United States and Europe with
a proceeding pending before the Board,
designated The North Atlantic Route

Transfer Case (which for brevity we shall call the Transfer Case).

In 1945 the Board decided a case, entitled North Atlantic Route Case [1] (which we shall call the Route Case), which involved the post-war air service pattern for United States air carriers between the United States and Europe, extending through the Middle East to India. Eleven applications for certificates were considered. The Board determined that there should be three routes, determined the character and stopping points of those routes, and awarded them to Pan American Airways, Inc., American Overseas Airlines, Inc., and Transcontinental and Western Air, Inc., respectively.

In 1948 Pan American and American Overseas entered into a merger agreement, whereby the former proposed to acquire all the assets of the latter in exchange for stock, which agreement, under the statute,[2] required the approval of the Board. The agreement provided that the American Overseas certificate would be transferred with its other assets. Approval of the five phases of the proposed merger of the companies was sought in five petitions, and these were consolidated in one case, the Transfer Case. Thereafter, the Board set as one part of that proceeding the question whether, if the proposed transfer of the certificate of American Overseas to Pan American were approved, the three certificates of American Overseas, Pan American and TWA should be amended or modified. The problem was whether, if Pan American acquired the outstanding certificate of American Overseas without modification, the competitive situation contemplated by the decision in the Route Case would be changed materially, since such a transfer would leave one carrier operating two of the three North Atlantic routes. In its order, the Board recited that the transfer

of the American Overseas certificate would substantially revise the route pattern established in the Route Case, and that, therefore, it should be able to modify those certificates; but it said that it would not at this time reexamine the route pattern apart from changes required by approval of the merger.

The foregoing was the situation faced by Seaboard & Western, petitioner in the case at bar, under circumstances which we now relate. Seaboard & Western was a so-called "irregular air carrier", which expression means that it did not have a certificate of public convenience and necessity or any assigned route, but was authorized, by a letter of registration, issued under the Board's Economic Regulations,[3] to engage in air transportation but not between designated points regularly. Seaboard operated as a contract carrier of property between points in the United States and points in Europe and the Middle East. In July, 1947, it filed an application for a certificate to transport property between certain of those points. It is entitled by statute to a hearing on that application.[4] It filed a motion on March 9, 1949, to consolidate its certificate proceeding with the Transfer Case. That motion was denied, but Seaboard was permitted to intervene. The denial of the consolidation is the subject of this petition for review.

Seaboard says that a reallocation of the three routes presently held by American Overseas, Pan American and TWA, which reallocation is a possibility in the Transfer Case, will necessarily involve consideration of the whole North Atlantic route pattern, and that, therefore, the decision in that case may determine the disposition of the Seaboard application for a certificate for some of those routes. It says that since the decision in that case may thus be dispositive of its application, it is entitled, under the doctrine of the Ashbacker case,[5]

1. 6 C. A. B. 319.

2. Secs. 401 and 408 of the Civil Aeronautics Act of 1938, 52 Stat. 987, 1001, as amended, 49 U.S.C.A. §§ 481, 488.

3. Sec. 292.1 of the Regulations, issued under Sec. 416 of the Civil Aeronautics Act.

of 1938, 52 Stat. 1004, as amended, 49 U.S.C.A. § 496.

4. Sec. 401(c) of the Act, 52 Stat. 987, as amended, 49 U.S.C.A. § 481(c).

5. Ashbacker Radio Corp. v. Federal Communications Comm., 1945, 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108.

to have its certificate proceeding consolidated with the Transfer Case. The Board replies that it does not propose to reconsider, in the Transfer Case, the North Atlantic route pattern, except to the extent that because of the proposed merger it may make a reallocation of existing routes as between the existing certificated carriers a condition to the approval of the merger of two of those carriers. It says that if that proceeding be opened for consideration of Seaboard's application, it must be opened to all other applications for certificates for routes or parts of routes in the North Atlantic area. It says that such a proceeding would be a totally different proceeding from the one now arranged as the Transfer Case. It says emphatically that the disposition of the Transfer Case will not affect in any respect the disposition of whatever rights Seaboard may have by virtue of its application.

█ Before entering upon consideration of the merits of the controversy, we are met with a contention of the Board, that the court is without jurisdiction to review its order denying the consolidation. It says that that order is merely procedural and interlocutory and that the jurisdiction of the court is limited to final orders. But "final" in this connection does not mean a mere last in chronological sequence but means the effectual disposition of rights.[6] In Federal Communications Comm. v. WJ R, The Goodwill Station,[7] the Supreme Court pointed out that the right to be made a party in that case was inherently involved with a basic issue on the merits, and it directed this court to pass upon the latter issue in deciding the former. That mandate makes the proper procedure clear. If anything said in Sykes v. Jenny Wren Co.[8] has been thought to be to the contrary, it has been superseded.

█ If the effect of the order denying consolidation in the case at bar were effectually to preclude Seaboard from rights which it otherwise would have, the order would be final as to Seaboard. It follows, as it frequently does in jurisdictional cases, for example, in the WJR case,[9] that we must consider and decide a portion of the controversy on the merits in order to determine whether we do or do not have jurisdiction.

It seems clear enough that Seaboard's statutory right to hearing and decision upon its application for a certificate for a North Atlantic route would not, of itself alone, require the Board to reopen the whole North Atlantic route pattern.[10] The issues considered and determined in the Route Case (which was an area case) must remain closed until they are reopened in a proceeding of that nature and for that purpose. Otherwise, complete confusion would exist, anybody, by simply filing an application, being able to reopen the whole subject of area routes and certificates. After the conclusion of an area case, carriers seeking certificates in the area have only such rights as are left open by the decision in that case. At the same time, it seems equally clear that if the Board has under consideration in a pending proceeding the fixing of routes, generally or of a specific nature, in an area and the selection of carriers to operate over those routes, it must include in the proceeding all pending applications for certificates

6. Mallory Coal Co. v. National Bituminous Coal Comm., 1938, 69 App.D.C. 166, 99 F.2d 399, and cases there cited; Aluminum Co. of America v. Federal Power Comm., 1942, 76 U.S.App.D.C. 182, 130 F.2d 445; Federal Communications Comm. v. N. B. C., 1943, 319 U.S. 239, 63 S.Ct. 1035, 87 L.Ed. 1374; Brotherhood of Railroad Trainmen v. Baltimore & O. R. Co., 1947, 331 U.S. 519, 67 S.Ct. 1387, 91 L.Ed. 1646; Republic Natural Gas Co. v. Oklahoma, 1948, 334 U.S. 62, 68 S.Ct. 972, 92 L.Ed. 1212, and cases there cited.

7. 1949, 337 U.S. 265, 69 S.Ct. 1097, 93 L.Ed. 1353.

8. 1935, 64 App.D.C. 379, 78 F.2d 729, 104 A.L.R. 864.

9. WJR, The Goodwill Station, Inc., v. Federal Communications Comm., 1949, 85 U. S.App.D.C. 392, 178 F.2d 720 (on mandate of Supreme Court).

10. See KFAB Broadcasting Co. v. Federal Communications Comm., 1949, 85 U.S. App.D.C. 160, 177 F.2d 40.

over such proposed routes. Otherwise, the statutory rights of excluded applicants to hearing and decision upon their applications would be futile.

The disputed question is whether, by its action in prescribing the issues in the Transfer Case, the Board has in fact reopened for consideration the area route pattern. The Board emphatically and repeatedly says, both in its orders and in its argument to us, that it did not intend to reopen and has not reopened consideration of that route pattern, except in so far as the routes involved in the merger are concerned. It says that it intends to consider in the Transfer Case merely the competitive situation which would ensue if the merger of two of the three existing certificated carriers were approved. It says that at the utmost it will merely make, as a condition of the approval of the merger, such adjustments between the two remaining certificated carriers as are necessary to maintain a proper competitive balance between them.

The Board's position appears to be neither unreal nor unreasonable. It does not seem to us that in reallocating, because of a merger, existing routes between existing carriers it need enter upon consideration of the whole problem of North Atlantic routes and carriers, and we think that we must rely upon the Board's declarations, formally entered in its orders and declared to us in its briefs, in respect to the

scope of the proceeding which it has instituted. Seaboard has been permitted to intervene in the proceeding and thus has full opportunity to know what is being done in it. If that proceeding should go beyond, or tend to go beyond, the issues as limited by the Board's declarations, Seaboard will have opportunity to protect whatever rights it has in respect of its application. As we have said, it has no initial right to have the area case reopened; its right is to have its application considered in any proceeding in which general consideration of the area is reopened.

It follows that in our view Seaboard has no such substantial interest in the Transfer Case as to require that its application for a certificate be consolidated for hearing and decision with the applications in that proceeding. The order of the Board denying Seaboard's motion for consolidation was not dispositive of any rights of Seaboard.

Seaboard's motion was filed in both proceedings. In so far as the proceeding upon Seaboard's application is concerned, the denial of the consolidation, not affecting finally any of Seaboard's rights, is interlocutory; the proceeding will continue in its ordinary course. Obviously, the order was interlocutory in the Transfer Case. This court, therefore, has no jurisdiction to review that order. The petition for review is, therefore,

Dismissed.