**MARINE CARRIERS CORPORATION,**
Plaintiff,

v.

**Henry H. FOWLER, individually, and as Secretary of the Treasury, Lester D. Johnson, individually, and as Commissioner of Customs, Alan Stephenson Boyd, individually, and as Secretary of Department of Transportation, Willard J. Smith, individually, and as Commandant of U. S. Coast Guard, and the Bureau of Customs, Defendants.**

No. 67 Civ. 4167.

United States District Court
S. D. New York.

Oct. 21, 1969.

Joseph Cardillo, Jr., New York City, for plaintiff; Robert V. Corbett and Christophil B. Costas, New York City, of counsel.

Robert M. Morgenthau, U. S. Atty., for the Southern District of New York, for defendants; Richard M. Hall, Asst. U. S. Atty., of counsel.

## MEMORANDUM

TENNEY, District Judge.

Plaintiff, a Delaware corporation, by amended complaint filed September 11, 1968 sought declaratory judgment pursuant to 28 U.S.C. § 2201, declaring it entitled to enroll its vessel, the "OBSERVER", in coastwise trade, and an injunction compelling defendants to so enroll it. Plaintiff, contending that there exists no genuine issue as to any material fact, has moved pursuant to Fed.R. Civ.P. 56 for an order granting summary judgment in its favor for the relief requested in its amended complaint. In opposition to this motion, defendants have similarly moved for summary judgment.

The complex but undisputed facts reveal the following:

Plaintiff's stock is owned solely by American citizens. The "OBSERVER," a vessel owned by plaintiff, was constructed by the joining of the forebody of the "SANTA HELENA" to the stern section of the "TRUSTCO", which joining was accomplished in an American shipyard. The "TRUSTCO" was an American-built vessel owned by plaintiff corporation and enrolled with authority to engage in coastwise trade. The forebody of the "SANTA HELENA" was originally the forebody of the "WAPELLO", an American-built vessel constructed for a Panamanian corporation. The "WAPELLO" was subsequently transferred to a Liberian corporation which severed the vessel's forebody and sold it to another foreign corporation. This last foreign corporation joined the "WAPELLO'S" forebody to the stern section of still another vessel, the result of which was the creation of the "SANTA HELENA".

On October 5, 1966, the Commissioner of Customs, in reply to a request for a ruling as to whether the "OBSERVER" would be eligible for enrollment in coastwise trade found that it would not be so eligible. The Assistant Secretary of the Treasury affirmed the Commissioner's ruling on October 27, 1966, and, on December 19th of the same year, affirmed his prior decision to adhere to the Commissioner's ruling. It is from these rulings that plaintiff seeks relief from this Court.

The requirements that a vessel must meet in order to engage in coastwise trade [1] are set forth in 46 U.S.C. §§ 11 and 252. Essentially, what is required is that the vessel be built in this country and be wholly owned by citizens of the United States. Section 883 of Title 46 of the United States Code, which is the central cause of dispute herein, in pertinent part provides that a vessel may not engage in coastwise trade unless it is:

"* * * a vessel built in and documented under the laws of the United States and owned by persons who are citizens of the United States, or [is a vessel] * * * to which the privilege of engaging in the coastwise trade is extended by section 13 or 808 of this title: *Provided*, That no vessel having at any time acquired the lawful right to engage in the coastwise trade, either by virtue of having been built in, or documented under the laws of the United States, and later sold foreign in whole or in part, or placed under foreign registry, shall hereafter acquire the right to engage in the coastwise trade: *Provided further*, That no vessel of more than five hundred gross tons which has acquired the lawful right to engage in the coastwise trade, by virtue of being built in or documented under the laws of the United States, and which has later been rebuilt, shall have the right thereafter to engage in the coastwise trade, unless the entire rebuilding, including the construction of any major components of the hull or superstructure of the vessel, is effected within the United States, * * *."

The provisos in Section 883 were apparently designed to exclude certain vessels from engaging in coastwise trade. In ruling that the "OBSERVER" was so excluded, the Commissioner relied on the first proviso, finding that the placing of a vessel under foreign registry would thereafter preclude it from acquiring coastwise trading rights. To use the Commissioner's language: "* * * the WAPELLO acquired the right to engage in the coastwise trade by having been built in the United States and lost that right when it was later placed under foreign registry." [2] In conclusion, the Commissioner noted that when part of a vessel that has lost the right to engage in coastwise trade is used in constructing another vessel, the resulting vessel is likewise ineligible for use in coastwise trade. Hence, because the "OBSERVER" consisted of the forebody of the "WAPELLO", the Commissioner found that it could not be enrolled for coastwise trading privileges.

In affirming the Commissioner's ruling and in response to plaintiff's claim that the first proviso of Section 883 was inapplicable to the "OBSERVER" because the "WAPELLO" had never acquired the right to engage in coastwise trade, the Assistant Secretary of the Treasury stated that the phrase "either by virtue of having been built in, or documented under the laws of the United States" was controlling, as this part of the first proviso reflected Congressional intent to exclude vessels like the "OBSERVER" [3] from coastwise trade.

The issue, as developed from the record before me, is whether by virtue of any of the provisos of 46 U.S.C. § 883, the "OBSERVER" should be denied the right to enrollment under the flag of the United States.

Plaintiff's position, essentially, is that the "OBSERVER" is not disqualified by virtue of any of the provisos of Section 883 from obtaining coastwise trading privileges. The Government, on the other hand, relies on the previous determinations of the Commissioner of Cus-

---

1. "Coastwise trade" is the privilege of engaging in commerce between points within the United States; that is, if a vessel is enrolled with the privilege of engaging in coastwide trade it may carry cargo from one domestic port to another.

2. Defendants' Exh. 1 at 2, attached to Affid. of Richard M. Hall (dated May 22, 1969).

3. Defendants' Exh. 2, attached to Affid. of Richard M. Hall (dated May 22, 1969).

toms and the Assistant Secretary of the Treasury, and insists that the legislative history of the first proviso of Section 883 clearly mandates the "OBSERVER'S" exclusion from this privilege.

■ The first proviso of Section 883 begins: "Provided that no vessel having at any time acquired the right to engage in coastwise trade." The clear and inescapable conclusion is that previous acquisition of coastwise trading privileges is a *sine qua non* to the proviso's application. In order for a vessel to come within its purview it must have once enjoyed the right to engage in coastwise trading and thereafter have been "sold foreign in whole or in part, or placed under foreign registry." The "WAPELLO", which is the vessel claimed by the Commissioner to have once enjoyed coastwise trading privileges, in fact never did. The "WAPELLO" never acquired this privilege since it was never owned by citizens of this country; it was built for and delivered to a foreign corporation. It follows that if the "WAPELLO" does not fall under the axe of the first proviso, it cannot preclude the qualification of the "OBSERVER" for enrollment in coastwise trade.

The Government, contending that such a construction is inconsistent with the purpose as expressed in the history of the first proviso, has urged this Court to adopt a construction more consonant with legislative intent. But even assuming the validity of the Government's premise, since I do not find the proviso in question unclear it is wise to abide by the elementary rule of statutory construction that absent ambiguity a statute should be controlled by its literal language, without resort to legislative history. United States v. Missouri Pac. R. R., 278 U.S. 269, 278, 49 S.Ct. 133, 73 L.Ed. 322 (1929); Elm City Broadcasting Corp. v. United States, 98 U.S. App.D.C. 314, 235 F.2d 811, 816 (1956).

However, mindful of the import of this issue, I have examined the statute's history for evidence of Congressional intent.

■ Both House reports on the first proviso state that "The bill seeks to prevent the *renaturalization* of ships *formerly entitled to coastwise service* but which have lost that right through foreign ownership." [4] (Emphasis supplied.) Additionally, an open letter to the Secretary of Commerce from J. C. Peacock, Special Assistant to the Director of the United States Shipping Board Bureau, reveals that "The effect of the proposed amendment [was] to exclude ex-American vessels, * * * from *again acquiring* the right to engage in the coastwise trade * * *" [5] (emphasis supplied.) Only a dictionary is needed to support the conclusion that reference to vessels "formerly entitled to coastwise service" necessarily assumes the previous possession of this right. Of course, similar reasoning is applicable with respect to reference made to vessels "again acquiring the right to engage in the coastwise trade." Consequently, I find that the first proviso was not intended to cover vessels that never had coastwise trading privileges.

■ Further, the legislative history of the first proviso indicates that it was specifically designed to exclude certain vessels of World War I vintage which were considered to have had only "nuisance value".[6] The "WAPELLO", having been constructed in 1953, and apparently of substantial value, is clearly outside the intended scope of the proviso. Moreover, in approving the first proviso Congress apparently intended to protect domestic maritime interests, such as American shipyards and the maritime labor market.[7] Both the "OBSERVER" and the "WAPELLO" have furthered these objectives. There is nothing "Un-

---

4. S.Rep. No. 870, 74th Cong., 1st Sess. (1935); H.R.Rep. No. 118, 74th Cong., 1st Sess. (1935).

5. *Id.*

6. *Id.*

7. *Id.*

american" about the construction of either vessel. It is undisputed that the "WAPELLO" was constructed in this country by a domestic shipbuilder and that the forebody of the "SANTA HELENA" (originally the forebody of the "WAPELLO") was joined to the stern of the "TRUSTCO" (an American-built vessel) in an American shipyard by American workers. Thus, after careful review of the legislative history, I find that Congress did not intend to exclude from coastwise trade vessels built in this country for foreign owners, which are subsequently reacquired by citizens of this country. It follows that the "OBSERVER" is not disqualified from engaging in coastwise trade under the first proviso to Section 883.

■ In reaching this conclusion, it should not be assumed that the Court has disregarded that portion of the first proviso which reads "by virtue of having been built in, or documented under the laws of the United States". Immediately preceding the first proviso reference is made to "vessels to which the privilege of engaging in the coastwise trade is extended by section 13 or 808 of this title." Sections 13 and 808 permit certain foreign-built vessels to engage in coastwise trade provided they are documented under the laws of the United States and owned by citizens thereof. Consequently, in construing the first proviso, I find that the above-quoted language referring to domestic construction or documentation was merely included to indicate that no matter how a vessel originally acquired coastwise trading privileges it would come within the ambit of the first proviso; that is, the first proviso is equally applicable to vessels that originally acquired the right to engage in coastwise trade whether by domestic construction and ownership (Sections 11 and 252) or by domestic documentation and ownership of vessels built abroad. (Sections 13 and 808.)

If the first proviso were to be construed as the Government suggests, a vessel would be disqualified from engaging in coastwise trade merely by virtue of having been built in this country and then "sold foreign". This construction would allow the phrase "by virtue of having been built in, or documented under the laws of the United States" to control the initial requirement of previous possession of coastwise trading rights. It seems anomalous to stress the descriptive phrasing of a statute to the point of ignoring a clear condition precedent to the statute's applicability. Logic dictates that such construction would be both injudicious and unwarranted, especially in view of the fact that a vessel does not acquire the right to engage in coastwise trade merely "by virtue of having been built in, or documented under the laws of the United States."

■ Under the facts of the instant case, it is equally possible to consider the "OBSERVER" a rebuilt vessel and, consequently, within the permissive scope of the second proviso to Section 883. Although the "OBSERVER" was given a new registration number, her Certificate of Registry refers to the year of the "TRUSTCO'S" original construction and, in addition, the certificate indicates that the "OBSERVER" was "rebuilt" by the Bethlehem Steel Corporation.[8] Further, by letter of June 1, 1966, the Maritime Administration of the Department of Commerce, by its General Counsel, advised plaintiff that the "OBSERVER" "will be a vessel rebuilt in the United States."[9]

Thus, if the "OBSERVER" is considered to be a rebuilt "TRUSTCO" it does qualify for coastwise trading privileges as "TRUSTCO" was originally entitled to such privileges and the entire rebuilding was done in the United States. This is all the second proviso requires for the continued enjoyment of

8. Reply Affid. of Joseph Cardillo, Jr. (dated June 2, 1969) at 5.

9. Plaintiff's Exh. A at 2, attached to Reply Affid. of Joseph Cardillo, Jr. (dated June 2, 1969).

the privilege of engaging in coastwise trade.

Accordingly, and for the foregoing reasons, plaintiff's motion for summary judgment is granted, and the Government's motion for summary judgment is denied.

Submit order on notice in accordance herewith.